**2007 BNH 014**

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                                          Bk. No. 06-10749-JMD
                                                                                Chapter 7
Mark Hartwick and
Angela Hartwick,
    Debtors


*Andrew D. Jeans, Esq.*
*Londonderry, New Hampshire*
*Attorney for Debtor*

*Geraldine Karonis, Esq.*
*Assistant U.S. Trustee*
*Attorney for Phoebe Morse, U.S. Trustee*

## MEMORANDUM OPINION

## I. INTRODUCTION

  Phoebe Morse, United States Trustee (the "Trustee"), filed a motion to dismiss this bankruptcy case pursuant to § 707(b)(2) or § 707(b)(3) of the Bankruptcy Code (Doc. No. 17) (the "Motion").[1]  Mark and Angela Hartwick (the "Debtors") filed an objection to the Motion (Doc. No. 22).  The Court held a hearing on the Motion on December 13, 2006.  At the hearing, the parties agreed to submit to the Court on agreed facts the question of whether a presumed abuse has arisen under § 707(b)(2) but to reserve for consideration at a later evidentiary hearing (1) the Debtors' rebuttal of a presumption of abuse if the Court were to find that the presumption

---

[1] Unless expressly stated otherwise, in this order the terms "Bankruptcy Code," "section" and "§" refer to title 11 of United States Code, 11 U.S.C. § 101 et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 ("BAPCPA").

has arisen, or (2) the Trustee's motion under § 707(b)(3) if the Court were to find that the presumption has not arisen. After the hearing, the Court took the matter under advisement.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS

The parties agree to the following material facts for purposes of determining if the presumption of abuse arises under § 707(b)(2)(A). The Debtors filed a voluntary petition under chapter 7 of the Bankruptcy Code on June 30, 2006 (the "Petition Date"). With the bankruptcy petition, the Debtors also filed their bankruptcy schedules, including schedules I and J, as well as Form B22A, their Statement of Current Monthly Income and Means Test Calculation for Use in Chapter 7. On October 27, 2006, the Debtors filed amendments to schedules I and J and the Form B22A.[2] The amended Form B22A ("Form B22A") shows the Debtors annualized current monthly income to be $88,621.20 which is above the $70,677.00 median income for family of three in New Hampshire. The Debtors' debts are primarily consumer debts. As above median filers, the Debtors were required to complete the expense portion of Form B22A and pass the

---

[2] In the Motion, the Trustee alleges certain errors in the original means test form regarding the Debtors' income and family size. However, at the hearing, the Trustee agreed that, for the purposes of determining whether the presumption arises under § 707(b)(2)(A), she accepts Form B22A and the only issue for the Court to decide is whether the Debtors can deduct their mortgage payments in line 42 of the form.

2

means test prescribed in § 707(b)(2) of the Bankruptcy Code.[3]  The Debtors completed the expense portion of Form B22A which resulted in a monthly disposable income of -$1,945.40.

Pursuant to the requirements of § 704(b)(1)(A), the Trustee reviewed the materials filed by the Debtors and filed a statement of presumed abuse under § 707(b)(2).  The Debtors deducted $3,750.78 on line 42 of Form B22A as payments due on the claims secured by first and second mortgages on their home, with both mortgages having more than sixty months of payments remaining.  Although the Debtors filed a statement of intention to reaffirm the two mortgages on their home, they testified at the first meeting of creditors that they had determined that they could not afford the keep their home and had not made a mortgage payment in "about six months," even though they were still living in the home.  On July 10, 2006, the first mortgagee filed a stay relief motion alleging that the Debtors were ten months in arrears in their mortgage payments.  The Debtors did not contest the stay relief motion and the Court granted the stay relief motion on August 4, 2006.  As of the date of the hearing on the Motion, the foreclosure was in progress and the Debtors were no longer living in the property.  The Debtors stated at the first meeting of creditors that they were close to acquiring another home on which the mortgage payment would be approximately $1,500.00 per month.  At the time of the hearing, the estimate for the new mortgage was $1,700.00 per month.  On September 7, 2006, the Trustee filed the Motion.

The Trustee contends that the Debtors' monthly disposable income under the means test should be $1,043.04, based upon the Debtors' projected $1,500.00 per month mortgage expense

---

[3] Failure to pass the means test results in a presumption that the granting of relief is an abuse of the provisions of chapter 7 of the Bankruptcy Code.

and not upon the actual amounts due under the Debtors' mortgages on the Petition Date, which over a sixty month period could repay $62,582.40.[4] Because the sixty month disposable income is more than $10,000.00 under the Trustee's means test calculation, the Trustee argues that the presumption of abuse arises. 11 U.S.C. § 707(b)(2)(A)(iv)(II). The Debtors contend that under the instructions contained on Form B22A and the provisions of § 707(b)(2)(A)(iii)(I), they are entitled to deduct the secured payments on the two mortgages on their home and, therefore, no presumed abuse arises.

### III. DISCUSSION

The Trustee argues that based upon the Debtors' testimony at the first meeting of creditors that they were not reaffirming the mortgages, were not making monthly payments, and as of the date of the hearing had moved out of their former home, they were not entitled to claim a deduction on line 42 of Form B22A. The Trustee contends that Congress did not intend to permit parties to deduct payments to secured creditors in circumstances where a debtor does not intend to reaffirm the obligation and make the payments. The Debtors contend that the instructions for line 42 on Form B22A track the statutory language of § 707(b)(2)(A)(iii) and that they completed line 42 and deducted their mortgage obligations in conformity with those instructions. Both parties agree that the Debtors' payments on secured claims are either included or excluded for purposes of the means test and line 42 of Form B22A, pursuant to the provisions

---

[4] The Trustee's computation of the funds available under a hypothetical chapter 13 plan did not provide for the fee to the chapter 13 trustee as required in line 45 of the means test form. In the District of New Hampshire the estimated fee is ten percent. Accordingly, the funds available for payments to creditors would be $56,324.16. However, this omission is of no consequence under the facts of this case.

of § 707(b)(2)(A)(iii).  Section 707(b)(2)(A)(i) provides that for purposes of the means test, a debtor's current monthly income is reduced by certain expenses, including average monthly payments on account of secured debts.  Section 707(b)(2)(A)(iii)(I) provides that for chapter 7 debtors:

> The debtor's average monthly payments on account of secured debts <u>shall be</u> calculated as the sum of -
>
> the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition . . . divided by 60.

11 U.S.C. § 707(b)(2)(A)(iii)(I) (emphasis added).

The starting point for interpreting a statute is the language of the statute itself.  <u>Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.</u> 447 U.S. 102, 108 (1980).  The word "shall" in § 707(b)(2)(A)(iii) provides no discretion to the Debtors, the Trustee or the Court in deciding how to determine such payments.  The statute requires the Debtors to deduct the amounts "scheduled as contractually due" on average during the sixty months following the date of the petition.  The statute does not condition the deduction of such payments on the Debtors' intent to retain the collateral for the secured claim.  It does not say that the Debtors may only deduct such payments if they are actually making the payments.  It does not make reference to the statement of intention filed by the Debtors pursuant to § 521(a)(2)(A).  Rather, the statute requires the Debtors, the Trustee and the Court to consider only the amounts due under the contracts themselves.  <u>In re Randle</u>, No. 06 B 05929, 2006 WL 3734351, at *2 (Bankr. N.D. Ill. Dec. 19, 2006); <u>In re Walker</u>, No. 05-15010-WHD, 2006 WL 1314125, at * 4 (Bankr. N.D. Ga. May 1, 2006).  The plain meaning of the statute is that the means test includes a deduction from current monthly income for all scheduled contractual payments to secured creditors regardless of a

debtor's intent with respect to retention of the collateral, reaffirmation of the secured debt or actual payment of the secured debt. Randle, 2006 WL 3734351, at *2; Walker, 2006 WL 1314125, at *4.

Where the plain meaning of a statute is clear, it is controlling unless the literal application of the language produces a result demonstrably at odds with the intentions of its drafters. U.S. v. Ron Pair Enters., Inc. 489 U.S. 235, 242 (1989). Several courts have observed that a primary intent of Congress in the passage of BAPCPA was to ensure that those debtors who can pay their debts do so. In re Skaggs, 349 B.R. 594, 600 (Bankr. E.D. Mo. 2006) (citing In re Hardacre, 338 B.R. 718, 725 (Bankr. N.D. Tex 2006)); In re Harris, 352 B.R. 304, 309-10 (Bankr. E.D. Okla. 2006). Those courts have held that since the purpose of the means test was to implement Congressional intent to limit relief under chapter 7 for debtors who can pay their debts, permitting deductions for payments on secured debts when a debtor intends to surrender the collateral would be at odds with Congressional intent. Those courts hold that § 707(b)(2)(A)(iii) must be interpreted not by its plain language but to implement Congressional intent. This Court respectfully disagrees with those conclusions.

Prior to BAPCPA, § 707(a) provided that a bankruptcy judge could dismiss a chapter 7 proceeding for cause. Huckfeldt v. Huckfeldt (In re Huckfeldt), 39 F.3d 829, 831 (8th Cir. 1994); Indus. Ins. Servs., Inc. v. Zick (In re Zick), 931 F.2d 1124, 1126 (6th Cir. 1991). Section 707(b) permitted dismissal if the granting of relief would constitute a substantial abuse of the provisions of chapter 7 of the Bankruptcy Code. First USA v. Lamanna (In re Lamanna), 153 F.3d 1, 5 (1st Cir. 1998). BAPCPA did not amend the provisions of § 707(a). BAPCPA did amend § 707(b) in three ways. First, BAPCPA amended § 707(b) by renumbering it as §

707(b)(1), expanding the parties who could move for dismissal, and changing the standard for dismissal from "substantial abuse" to "abuse."  Second, BAPCPA added a means test in new § 707(b)(2).  The means test included a formula for determining when a presumption of abuse arises and what a debtor must do to rebut such presumption.  Finally, BAPCPA added a new subsection, § 707(b)(3), which directs that any determination of abuse under § 707(b)(1) must consider (1) whether the debtor filed his petition in bad faith or (2) the totality of the circumstances of the debtor's financial situation demonstrates abuse.  Accordingly, the totality of the circumstances test, previously applicable to determinations of substantial abuse under § 707(b) by judicial precedent, is now expressly mandated by Congress in the Bankruptcy Code.

      Prior to BAPCPA, bankruptcy courts could dismiss chapter 7 cases either for cause or if granting relief would be a substantial abuse under the totality of the circumstances test.  After BAPCPA, bankruptcy courts may dismiss chapter 7 cases for cause (including bad faith filing), for presumed abuse under the means test and for abuse under the totality of the circumstances test.  Therefore, the only material changes under BAPCPA are an apparent relaxation of the standard from substantial abuse to abuse and the addition of the means test.  Under the totality of the circumstances test, courts may take into account both current and foreseeable circumstances, including a debtor's ability to repay his debts under a chapter 13 plan.  In re Cortez, 457 F.3d 448, 455 (5th Cir. 2006); Lamanna, 153 F.3d at 5.  Therefore, in BAPCPA, Congress, by incorporating the judicially created totality of the circumstances test into the determination of abuse as a cause for dismissal of a chapter 7 case, has permitted bankruptcy courts, inter alia, to examine the postpetition financial condition and circumstances of a debtor in determining abuse under § 707(b)(3).

"Congress' intent in adding the Means Test was to create a 'mechanical' formula for presuming abuse of Chapter 7."  Randle, 2006 WL 3734351, *3 (citing Report of the Committee on the Judiciary, House of Representatives, to Accompany S. 256, H.R. Rep. No. 109-31, Pt. 1, p. 553, 109th Cong., 1st Sess. (2005)).  "Congress' intent to use a standardized or mechanical test and avoid reliance on individualized information as much as possible is demonstrated throughout § 707(b)(2)."  Id.  The major objective of Congress in adding the means test in § 707(b)(2) was to limit judicial discretion from the process of determining abuse by providing an objective standard for establishing a presumption of abuse.  In re Hartwick, 352 B.R. 867, 870 (Bankr. D. Minn. 2006).  However, Congress did not remove the ability of bankruptcy courts to consider circumstances, including postpetition developments, in determining abuse.  On the contrary, Congress expressly incorporated the formerly judicially created totality of the circumstances test which permits consideration of circumstances both preceding and following the filing of the petition.

For the reasons discussed above, this Court finds that consideration of postpetition developments in the application of the means test would be contrary to Congressional intent as expressed in the amendments to § 707(b) by BAPCPA.  As one court has observed:

> To allow a movant to include the outcome of future events as part of the means test would eliminate the distinction between the presumption of abuse test and the totality of the circumstances test. The constraints of § 707(b)(2)(A) apply equally to the UST and the Debtors.  If the Debtors want to present facts that do not appear in the means test, they must argue these facts as special circumstances under § 707(b)(2)(B).  Similarly, if the UST wishes to have the court consider facts external to the means test, it must make a motion under § 707(b)(3) based on the totality of the circumstances and will not receive the benefit of the presumption of abuse.

8

In re Singletary, 354 B.R. 455, 465 (Bankr. S.D. Tex. 2006).  The application of the plain meaning of § 707(b)(2)(A)(iii) to the circumstances that exist on the petition date in the application of the means test is not demonstrably at odds with Congress' apparent intent in enacting BAPCPA because Congress expressly adopted the totality of the circumstances test in § 707(b)(3) to permit a movant to raise, and the bankruptcy court to consider, a debtor's postpetition financial circumstances.

At least one bankruptcy court has held that the means test form should be amended by a debtor to reflect a change in intent, or loss of collateral, which occurs postpetition up to the date that the United States Trustee files a motion to dismiss.  Id. at 467.  However, that holding was based upon postpetition changes in income under the pre-BAPCPA version of § 707(b).  See Cortez, 457 F.3d at 457-58.  The Singletary court held that the means test was a mechanical formula, but that circuit precedent required it to apply the formula to the financial circumstances that existed on the date the motion to dismiss was filed.  The same precedent requiring consideration of postpetition financial circumstances exists in this Circuit.  Lamanna, 153 F.3d at 5.  However, both Cortez and Lamanna involved the application of the totality of the circumstances test.  For the reasons discussed above, this Court believes that the means test was intended by Congress to be applied to the financial circumstances on the petition date.  To the extent that the Trustee or the Court wish to consider postpetition changes in those circumstances, the totality of the circumstances test under § 707(b)(3) must be applied and the Court may consider the Debtors' postpetition financial circumstances.  See In re Pennington, 348 B.R. 647, 651 (Bankr. D. Del. 2006).

## IV.  CONCLUSION

Accordingly, the Court shall deny, in part, the Motion to the extent that it seeks dismissal under § 707(b)(2) and shall issue a separate order directing the parties to consult with each other and file a proposed scheduling order with the Court for a hearing on the Motion under § 707(b)(3).  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

ENTERED at Manchester, New Hampshire.


Date:   February 12, 2007           /s/ J. Michael Deasy
                                    J. Michael Deasy
                                    Bankruptcy Judge